UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | ) | | |
| | ) | | |
| v. | ) | Cause Nos. | 1:22-CR-34-HAB |
| | ) | | 1:23-CV-345-HAB |
| ALMAREZ D. HENDERSON | ) | | |

**OPINION AND ORDER**

Defendant pleaded guilty to possession of methamphetamine with intent to distribute and carrying a firearm during and in relation to a drug trafficking crime. He received the statutory mandatory minimum sentence. Defendant now moves under 28 U.S.C. § 2255 to vacate and set aside his conviction and sentence, citing ineffective assistance of counsel ("IAC"). (ECF No. 58). That motion is now fully briefed (ECF Nos. 68, 69), and an evidentiary hearing was held. (ECF No. 88). Because the Court finds no merit in Defendant's motion, it will be denied and no certificate of appealability will issue.

**I.    Background Facts[1]**

**A.    *Offense Conduct***

In April 2022, officers observed Defendant at a motel in Fort Wayne, Indiana, known for drug activity. Defendant went to several rooms on the west side of the motel, staying less than 10 minutes in each room, and carrying a gray bag. According to the training and experience of the observing officer, this reflected drug trafficking activity.

Officers followed Defendant when he left the motel and noted that the license plate on his vehicle returned to a different make and model. Officers also saw Defendant change lanes without signaling. A traffic stop was initiated. A check of Defendant's ID showed that his license was

---

[1] Defendant filed no objection to the presentence investigation report ("PSR") (ECF No. 39), so the Court accepts the facts in the PSR as true.

suspended and that he had an outstanding warrant. Defendant was taken into custody. A search of his person revealed a knife and 0.6 grams of methamphetamine. A search of Defendant's vehicle uncovered methamphetamine paraphernalia and a dark gray bag. Inside the bag was additional methamphetamine and paraphernalia, along with a 9mm handgun.

**B.** *Procedural Background*

In May 2022, Defendant was charged in a four-count indictment with possession of 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c), being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and forfeiture. (ECF No. 3-1). He promptly pleaded guilty to the first two charges, with the Government agreeing to dismiss the third. (ECF No. 28). The plea also called for a binding term of 180 months' imprisonment. (ECF No. 24-1 at 5). As part of his plea agreement, Defendant agreed to waive his right to appeal or otherwise contest his conviction or sentence, including through a motion under 28 U.S.C. § 2255, on any ground other than IAC. (ECF No. 24-1 at 5-6).

A plea hearing was held before Magistrate Judge Susan Collins. During the hearing, Defendant testified under oath that he read, understood, and discussed the plea with his counsel, Federal Community Defender Michelle Kraus ("Attorney Kraus"). (ECF No. 66 at 14-15). He testified that no one had made him any promises, or threatened him in any way, to persuade him to sign the plea. (*Id*. at 15). Defendant also affirmed that he understood the binding term and his appellate and collateral attack waiver. (*Id*. at 17-18)

Defendant was sentenced in January 2023. The Court accepted the binding plea and Defendant received 180 months' imprisonment, the statutory mandatory minimum, and five years' supervised release. He did not appeal his sentence or conviction.

C.  *Evidentiary Hearing*

This Court held a hearing on the first ground raised in Defendant's petition, that being that counsel rendered IAC by refusing his request to file a notice of appeal. The Government called Attorney Kraus as its only witness. Attorney Kraus testified to her usual practice at sentencing regarding appeals. She testified that she discusses appeal options with defendants before the sentencing hearing, as she rarely has time to do so afterward. She presents her clients with an appeal election form containing three options: they want to appeal, they don't want to appeal, or they want to think about it. She then asks them to select an option, sign, and date the form. And the Government entered as an exhibit that same form, purporting to bear Defendant's signature. On the form, Defendant selected the option reflecting his appellate waiver and acknowledging that Attorney Kraus would not file a notice of appeal. This is that form:

## APPEAL ELECTION

United States v. <u>Henderson</u>

Case No. 1:22cr-34

My attorney has discussed with me the benefits and consequences of filing an appeal of my case. My attorney has answered all of my questions about the issues which could be appealed, and the merits of those issues; the effect an appeal would have on the sentence which I have received. If I have signed a plea agreement that contains a waiver of appeal, I have been advised that if I file an appeal the United States Attorney can declare my plea agreement void and reinstate any dismissed charges or file any other charges or seek further penalties.

I understand that failure to file a notice of appeal within fourteen days of the date my judgment and sentence is filed with the Clerk will mean that I will be not be allowed to appeal my case later, and I may give up the right to later raise any issues that could have been raised on a direct appeal.

I feel I am fully informed as to the decision of whether or not to file a notice of appeal in my case. My attorney has answered all of my questions to my satisfaction, and I make the following election freely and voluntarily and without being subject to any force, threats, or coercion:

(*Initial one choice*)

_____    I direct my attorney to file a notice of appeal on my behalf.

_____    I have decided not to file an appeal. I understand that <u>my attorney will NOT file a notice of appeal</u>. If I change my mind within the time allowed for filing a notice of appeal I understand that I can file a notice of appeal myself by writing to the Clerk and stating that I want to appeal. I also understand that if I want my attorney to file a notice of appeal I must notify my attorney <u>in writing</u> in sufficient time to allow a notice of appeal to be prepared and filed.

_X_    I understand that pursuant to my Plea Agreement, I waived any right to an appeal I may have including but not limited to 18 U.S.C. § 3742 and 28 U.S.C. § 2255. I further acknowledge that <u>my attorney will NOT file a notice of appeal</u> on my behalf.

DATED: _1-9-23_

_____
Defendant

4

Although Attorney Kraus had no direct recollection of Defendant signing the form, she testified that he "must have." But Attorney Kraus was adamant that Defendant never requested that she file a notice of appeal on his behalf.

Defendant told a very different story during his testimony. He testified that he asked for an appeal twice on the day of his sentencing. When he asked the first time, during the sentencing hearing, Defendant states he was aggressively shhh-ed by Attorney Kraus. When he asked again after the hearing, while asking that a petition for compassionate release be filed, Attorney Kraus allegedly responded that her office "doesn't do that." Her response was an apparent reference to the compassionate release filing. Defendant concedes that he never contacted Attorney Kraus after the sentencing hearing to request an appeal, stating that he was waiting on her to contact him.

Defendant denied signing the appeal election form. He conceded that he signed something at the sentencing hearing provided to him by Attorney Kraus but testified that he had not seen the appeal election form until it was provided to him by his habeas counsel. He denied that his signature is on the form. He also stated that he would not have placed an "X" by his choice when the form directed the signer to "initial" their choice.[2]

## II.    Legal Discussion

### A.    *28 U.S.C. § 2255*

Relief under 28 U.S.C. § 2255 is reserved for "extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). To proceed on a motion under § 2255, a federal prisoner must show that the district court sentenced him in violation of the Constitution or laws of the United States, or that the sentence exceeded the maximum authorized by law or is otherwise

---

[2] Both parties were given the option to file additional briefs after the evidentiary hearing, and both declined.

subject to collateral attack. *Id.* A § 2255 motion is neither a substitute for nor a recapitulation of a direct appeal. *Id*. As a result:

> [T]here are three types of issues that a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the procedural default as well as actual prejudice from the failure to appeal.

*Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992). Additionally, aside from showing "cause" and "prejudice" from the failure to raise constitutional errors on direct appeal, a § 2255 movant may alternatively pursue such errors after proving that the district court's refusal to consider the claims would lead to a fundamental miscarriage of justice. *Johnson v. Loftus*, 518 F.3d 453, 455–56 (7th Cir. 2008). This general rule does not apply to claims of ineffective assistance of counsel, which may be brought via § 2255 even if not pursued during a direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

**B.    *IAC Standard***

To make out a successful ineffective assistance of counsel claim, Defendant must show that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 688-94 (1984).

> With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

*United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). Moreover, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. Thus, many trial determinations, like so

6

many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." *United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus, the Court must resist a natural temptation to become a "Monday morning quarterback." *Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

> It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

*United States v. Ashimi*, 932 F.2d 643, 648 (7th Cir. 1991) (citations and quotations omitted).

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." *Strickland*, 466 U.S. at 694.

**C.    *Attorney Kraus did not Render IAC by Failing to File a Notice of Appeal***

"When a defendant asks his attorney to pursue a direct appeal and the attorney does not do so, it is per se ineffective assistance of counsel." *Gant v. United States*, 627 F.3d 677, 681 *(*7th Cir. 2010) (citing *Kafo v. United States,* 467 F.3d 1063, 1069 (7th Cir. 2006)). To succeed on such a claim, however, a defendant must show that he requested his attorney file an appeal. *Id.*; *see also Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994) ("'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue."). The parties agree that whether Defendant requested an appeal is a matter of weighing the credibility of Attorney Kraus and Defendant.

7

The Court finds Attorney Kraus' testimony to be wholly credible. First, the testimony is consistent with the Court's first-hand observations. Indeed, the Court and its staff have witnessed Attorney Kraus discuss plea options with clients and present them with the appeal election form. But perhaps more importantly, the Court has five years of regular experience with Attorney Kraus since she became the FCD. Attorney Kraus is a zealous advocate with a reputation for forthright presentations to the Court. The Court finds no reason to believe that she would risk her position, or her livelihood, by committing perjury and forgery here.

And while there's nothing inherently incredible about Defendant's testimony, the Court cannot say it found Defendant credible. Most significantly, Defendant's testimony at the hearing deviated from his representations in his § 2255 filings. Defendant testified to two times when he requested an appeal during the hearing, both of which he claimed occurred at his sentencing. Yet his § 2255 petition represents that "counsel was instructed on many occasions to file a notice of appeal," and that "on more than one occasion, trial counsel refused to do so." (ECF No. 58 at 4). In his accompanying brief, Defendant claims that he first asked Attorney Kraus to file an appeal "prior to sentencing, telling counsel he wanted to pursue a direct appeal regardless of the outcome." (ECF No. 58-1 at 3). These inconsistencies cast doubt on Defendant's veracity.

Nor does the evidence as a whole support Defendant's claims. Defendant states that he did not sign the appeal election form, but his signature on that form:

[signature image labeled "Defendant"]

and his signature on his plea:

> E-mail Address:
> Stacey.speith@usdoj.gov
>
> *[signature]*
>
> Almarez D. Henderson
> Defendant

are at least superficially similar. Any discrepancy is likely explained by the fact that Defendant would have signed the form while handcuffed.

And the Court finds Defendant's post-sentencing inaction to be telling. The Court expressly told Defendant at sentencing that any notice of appeal "must be filed within 14 days of judgment being entered" here. (ECF No. 67 at 24). If Defendant was as adamant about filing a notice of appeal as he now claims, the Court finds it incredible that he would simply let that deadline pass. This is particularly true since Defendant, like all individuals sentenced, is advised that the Clerk of the Court would prepare and file a notice of appeal at his request. (*Id.*).[3]

In short, Defendant has failed to prove, by any evidentiary standard, that he directed Attorney Kraus to file a notice of appeal on his behalf. She cannot, then, have rendered IAC for failing to do so. His petition on this ground lacks merit.

---

[3] And not for nothing, the Court has affirmative evidence that Attorney Kraus' version, and not Defendant's, is true. Following the evidentiary hearing, Tina Gallucci, the Court's court reporter, provided an audio recording of the sentencing hearing. That recording, taken from the Court's own audio and computer equipment, captured conversations between Attorney Kraus and Defendant both before and after the hearing. Beginning at 1:32 of the recording, Attorney Kraus spends more than a minute explaining Defendant's appeal options and the appeal election form. Beginning at 34:40 of the recording, Attorney Kraus can be heard presenting the appeal election form to Defendant, asking him to select an option, and directing him to sign. All consistent with Attorney Kraus' testimony, and all inconsistent with Defendant's.

The Court believes that this audio recording falls under the scope of materials of which it can take judicial notice, as it can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). That said, because the Court can find no clear direction in the case law on the use of in-court-but-outside-a-hearing recordings, the Court stresses that it did not consider the recording in reaching its decision.

**D.    *Attorney Kraus did not Render IAC by Failing to Move to Suppress***

Moving on, Defendant next alleges that Attorney Kraus rendered IAC by failing to move to suppress the evidence found in his vehicle. He calls this a "catastrophic event," and argues that the "police had no constitutionally-valid [sic] basis to search the car." (ECF No. 58-1 at 5).

When the allegation of ineffectiveness is the attorney's failure to move to suppress evidence from an illegal search under the Fourth Amendment, the petitioner must prove, in addition to the *Strickland* prongs, that his Fourth Amendment claim has merit, and that there is a reasonable probability that the verdict would have been different without the excludable evidence. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). The Court will assume, for the purposes of Defendant's petition, that the outcome of his case would have been different if the evidence from his vehicle had been suppressed. But the Court cannot conclude that a motion to suppress would have had any merit.

Defendant does not challenge the traffic stop or his arrest. Nor does he contest the legal proposition that officers can search a vehicle incident to arrest if "it is reasonable to believe the vehicle contains evidence of the offense of arrest." *United States v. Paige*, 870 F.3d 693, 702 (7th Cir. 2017) (quoting *Arizona v. Gant*, 556 U.S. 332, 346 (2009)). And Defendant does not dispute the existence the "automobile exception" to the warrant requirement, which permits an officer to search a vehicle where the officer has probable cause to believe that the vehicle contains evidence of criminal activity. *Maryland v. Dyson*, 527 U.S. 465, 467 (1999).

Indeed, Defendant's petition and accompanying brief contain no legal argument for suppression, other than a passing argument that Defendant had an expectation of privacy in the vehicle. (ECF No. 58-1 at 6). No legal argument is presented in his reply, either. (ECF No. 69 at 4-5). Instead, the reply challenges the factual bases for the search of his vehicle, claiming that it is

"inconceivable/impossible" that the officers observed his drug trafficking activities as they claimed. (*Id*. at 5). The Court assumes, then, that Defendant is challenging the officer's probable cause to believe that his vehicle contained evidence of criminal activity.

The Court agrees with the Government that there is no reason to believe that a motion to suppress would have had merit. The officers here observed Defendant at a motel known for drug activity. His actions at the motel, going into several rooms for 10 minutes at a time, reflected drug trafficking. And Defendant had methamphetamine on him when he was stopped and searched. These facts were more than enough for officers to have probable cause to believe that evidence of drug crimes might be found in the vehicle. *See United States v. Hays*, 2021 WL 4130501, at *5 (C.D. Ill. Sept. 10, 2021) (collecting cases).

Defendant's response does little to move the needle. He argues, in essence, that officers could not have seen his gray bag or him going in and out of rooms given the time of day (it was late at night) and the distance of the observation (officers were in a neighboring parking lot). But beyond Defendant's naked assertions, there is nothing offered that calls the officers' representations into question. No evidence about the officers' ability to see is offered, nor does Defendant offer evidence of how far away the officers were when they observed his activity. The Court, then, has no basis to doubt the facts that prompted the search of Defendant's vehicle.

And this is to say nothing of the potential effect of a hail mary motion to suppress on plea negotiations. To reiterate, Attorney Kraus obtained a binding plea for the dismissal of the § 922(g)(1) count and a statutory mandatory minimum sentence. In other words, the plea was the best Defendant could have hoped for. The Court finds that Attorney Kraus "made the reasonable strategic decision not to pursue a motion to suppress—regardless of its underlying merit—because

doing so would have undermined the plea agreement being negotiated at that time with the government." *Perez v. United States*, 285 Fed. App'x. 328, 332 (7th Cir. 2008).

Any motion to suppress would have been frivolous and would have disadvantaged Defendant in plea negotiations. Attorney Kraus cannot be considered ineffective for failing to file a frivolous motion. *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013). Ground two of Defendant's petition, complaining about the failure to file such a motion, is without merit.

E.    *Attorney Kraus did not Render IAC for Failing to Investigate*

Defendant next argues that Attorney Kraus was ineffective for failing to conduct an "independent pretrial investigation." Although the petition and accompanying brief do not set out what Attorney Kraus failed to investigate, Defendant's reply clarifies that an investigation would have shown "there is NO physical way officers could have witnessed what color/type of backpack" Defendant was carrying at the motel. (ECF No. 69 at 6) (original emphasis).

As the Seventh Circuit has stated, "a petitioner alleging that counsel's ineffectiveness was centered on a supposed failure to investigate has the burden of providing the court sufficiently precise information, that is, a comprehensive showing as to what the investigation would have produced." *Hardamon v. United States*, 319 F.3d 943, 951 (7th Cir. 2003) (quotations omitted). But cases where IAC can be based on a failure to investigate are "rare." *Jennings v. United States*, 461 F. Supp. 2d 818, 828 (S.D. Ill. 2006).

This is not one of those rare cases. Defendant does not make a "comprehensive showing" as to what an investigation would have shown. Instead, he presents his own opinion on the officers' visual acuity. That's not enough. And to the extent that Defendant thinks the investigation was necessary to support his motion to suppress, the Court incorporates its prior discussion of such a motion. The officers could have been mistaken about the color or type of backpack, but that would

not change Defendant's presence at a known drug premises, his suspicious acts at that premises, or his possession of methamphetamine. Attorney Kraus' alleged failure to investigate neither fell below the standards of reasonableness nor prejudiced his defense, so his petition on that ground is without merit.

### F. *Attorney Kraus did not Render IAC by "Bullying" Defendant into a Plea*

Finally, Defendant claims that he pleaded "involuntarily and unknowingly" because of "bullying" by Attorney Kraus. (ECF No. 58-1 at 8). Essentially, Defendant claims that Attorney Kraus threatened him with even more jail time if he did not agree to the plea, and that it was fear of a longer sentence that motivated his plea.

But Defendant's sworn statements undermine this argument. During the plea hearing, Defendant testified under oath that he read, understood, and discussed the plea Attorney Kraus. (ECF No. 66 at 14-15). He testified that no one had made him any promises, or threatened him in any way, to persuade him to sign the plea. (*Id*. at 15). There was nothing about Defendant's statements at the plea hearing that showed anything but a knowing and voluntary plea.

"Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard. A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999). Magistrate Judge Collins credited Defendant's statements in accepting his plea, and this Court did likewise when it adopted Magistrate Judge Collins' Report and Recommendation. (ECF No. 32). As the Seventh Circuit said, the game is over.

**III.    Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); Rule 11 of Rules Governing Section 2255 Proceedings. The substantial showing standard is met when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotation marks omitted); *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983). Because the Court finds that no reasonable jurist could conclude that Defendant is entitled to relief, no certificate of appealability will be issued.

**IV.    Conclusion**

For these reasons, Defendant's petition under 28 U.S.C. § 2255 (ECF No. 58) is DENIED and no certificate of appealability will issue.

SO ORDERED on October 2, 2024.

 s/ *Holly A. Brady*
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT